IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

HOLLANDA CONLEY      )
                               )
v.                       )     No. 1:19-0093
                               )
ANDREW M. SAUL      )
Commissioner of Social Security    )

**To:    The Honorable William L. Campbell, Jr., District Judge**

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial

review of the final decision of the Social Security Administration ("Commissioner") denying

Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act

("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative

record (Docket Entry ("DE") 16), to which Defendant has filed a response. (DE 18.) Plaintiff has

also filed a subsequent reply to Defendant's response. (DE 21.)[1] This matter has been referred to

the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and

recommendation. (DE 3.)

---

[1] Plaintiff's memorandum in support of her motion for judgment on the record exceeds the 25-page limit requirement contained in Local Rule 7.01(2). Plaintiff's reply brief exceeds the five-page limit imposed by the Court's previous order. (DE 13 at 3.) While the Court will overlook such inattention and address the merits of Plaintiff's motion, counsel would do well to both familiarize himself with the Local Rules and follow instructions in orders issued by the courts before which he practices.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 16) be **DENIED**.

## I. INTRODUCTION

Plaintiff initially filed an application for DIB on October 28, 2016, in which she asserted that, as of the alleged onset date of November 9, 2012, she was unable to work due to plantar fasciitis, "black outs," "dizzy spells," migraines, and problems with her neck, elbow, and back. (*See* Transcript of the Administrative Record (DE 12) at 76-77, 87).[2]

Plaintiff's application was denied initially and upon reconsideration. (AR 76, 87.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Marty S. Turner on June 19, 2018. (AR 48.) On October 10, 2018, the ALJ denied the claim. (AR 13-15.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 1, 2019 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 9, 2012 through her date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through December 2, 2015, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

4. From December 3, 2015 through the date last insured, the claimant had the following severe impairment: bilateral foot disorder (20 CFR 404.1520(c)).

5. From December 3, 2015 through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds that from December 3, 2015 through the date last insured, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

7. Through the date last insured, the claimant was capable of performing past relevant work as an office assistant/data entry (DOT 203.582-054) classified at the sedentary exertional level and semiskilled with SVP 4; and title clerk (DOT 205.582-066) classified at the sedentary exertional level and semiskilled with SVP 3. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 9, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f)).

(AR 18-27.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings

4

contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.*

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* § 404.1520(a)(4)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id.* § 404.1520(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. § 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work, which resulted in a finding that Plaintiff was not disabled through the date last insured. (AR 18-27.)

### C. Plaintiff's Assertion of Error

Plaintiff sets forth six different (although somewhat overlapping) assertions of error in her brief: (1) that the administrative opinion contains "determinative factual errors"; (2) that the ALJ improperly rejected a treating physician's opinion; (3) that the ALJ erred in the step two finding; (4) that the ALJ erred by granting significant weight to the opinions of state agency physicians; (5) that the ALJ erred by failing to recontact a treating physician to obtain additional information; and (6) that the ALJ "declined to follow / failed to correctly apply the law." (DE 16-1 at 2-3.) Based on these purported errors, Plaintiff requests that the Commissioner's decision be reversed and/or remanded for additional proceedings. (*Id*. at 28.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v.*

6

*Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

**1. Alleged Errors in the Administrative Opinion.**

Plaintiff claims that the administrative opinion contains "multiple serious and determinative factual errors" that warrant reversal of the ALJ's decision (DE 16-1 at 12), the first of which involves observations regarding Plaintiff's ability to "mov[e] bales of hay" and "work[] on a farm without any limitations from her symptoms." (AR 25.) The Court notes that the ALJ cited specific medical records in support of these assertions, including a treating chiropractor's notation on January 23, 2014 that Plaintiff had recently moved bales of hay (AR 298), and a notation from her primary care physician on February 12, 2018 indicating that Plaintiff "works on a farm without any limitation from symptoms." (AR 429-30.)[3]

Although Plaintiff accuses the ALJ of "cherry[-]picking" these statements from the administrative record (DE 16-1 at 13), she does not explain how the ALJ's reliance on such evidence violates any regulation or other doctrine. She instead cites generally to an inapposite Seventh Circuit opinion involving consideration of a mental illness, *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011), and a Sixth Circuit opinion reversing an administrative decision based on the subject ALJ's "fail[ure] to discuss at all the accepted medical standard for diagnosing fibromyalgia." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013). Such

---

[3] The chiropractor note in question specifically states the following: "Upper & lower back – moved 5x5 bale of hay!!" (AR 298.)

imprecise argumentation fails to demonstrate that the ALJ committed reversible error by accurately reciting medical records in the administrative opinion.

Plaintiff instead attempts to downplay the significance of the 2014 chiropractor notation by suggesting that the provider misinterpreted her statement, which she claims was intended to convey only that Plaintiff watched her husband move bales of hay. (DE 16-1 at 12-13.) The problem, however, is that Plaintiff identifies nothing in the record to indicate any such misunderstanding by the provider. The office notes in question instead document a series of appointments to address certain conditions caused by a variety of physical activities that included driving an all-terrain vehicle ("ATV") and going on a canoe trip. (AR 290, 295-96.) It was therefore reasonable for the ALJ to assume the veracity of the provider's notation that Plaintiff had in fact moved bales of hay.

Plaintiff additionally argues that the February 2018 note – in which a treating provider asserts that Plaintiff "works on a farm without any limitation from symptoms" (AR 430) – was improperly decontextualized by the ALJ given that the visit concerned only an electrocardiogram and Plaintiff's ongoing tobacco abuse, and did not entail a review of Plaintiff's overall physical condition. Yet even assuming that the provider intended to document only that Plaintiff's heart condition did not cause any functional limitations, the note nonetheless reveals that Plaintiff continued to engage in farm work in 2018, which appears to be inconsistent with her 2018 testimony that she is unable to garden or work in her yard in any capacity. (AR 55.) The ALJ in fact discussed the notation in the context of considering the credibility of her statements (AR 24-25), and such evidence tends to undermine Plaintiff's allegations that her symptoms rendered her unable to physically exert herself. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence

in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). The Court thus finds no error in the ALJ's reliance on this medical notation.

Plaintiff's second alleged "factual error" appears to involve two reports completed by Dr. Jerry Brown on January 28, 2017 regarding findings from x-rays of Plaintiff's lumbar and cervical spine. The reports document no abnormal findings with respect to the lumbar spine and only mild disc space narrowing at the C5-6 level. (AR 323-24.) The cervical x-ray report also contains the following notation: "Enlarged sella turcica, which can be a normal anatomic variant but given the calcifications that appear to overlie this region on the skull film[,] [f]urther imaging by MR is recommended. This will be a brain MRI." (AR 324.) Dr. Thomas Thomson, a non-examining state agency physician, subsequently opined – based on a review of medical records that included Dr. Brown's x-ray findings – that Plaintiff "has been treated for migraine headache; there is no current evidence of limitation related to this; not severe." (AR 73.) Plaintiff contends that Dr. Thomson deliberately withheld from his report Dr. Brown's reference to an enlarged sella turcica and now asks the Court to remand this matter to the ALJ to obtain testimony from both Dr. Thomson and Dr. Thomas Thrush, another non-examining state agency physician. (DE 16-1 at 14.)

The Court declines to grant Plaintiff's unusual request given that she has identified no reversible error in the ALJ's opinion. The target of her grievance is instead the state agency physicians, as evidenced by her inclusion of a newspaper article regarding the role of such physicians in disability claims with her brief. (DE 16-2). Even overlooking the Court's inability to consider evidence that was not before the ALJ, *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014), Plaintiff has failed to identify a "factual error" that warrants reversal of the

Commissioner's decision. Plaintiff's argument regarding the weight accorded to the various medical opinions contained in the administrative record is addressed below.

### 2. Medical Opinion Evidence and Severity Finding.

Plaintiff's second assertion of error contains a sprawling discussion of the opinions of her treating providers, the reports provided by the non-examining state agency physicians, and the ALJ's step two finding that only Plaintiff's foot condition constitutes a "severe" impairment. (DE 16-1 at 14-16.) However, each of these arguments is set forth in another portion of Plaintiff's brief. Because this assertion of error merely retreads arguments proffered elsewhere, which are discussed herein, the Court need not separately address it.

### 3. Step Two Finding.

An impairment is considered "severe" at step two of the ALJ's evaluation only if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Step two is considered "a *de minimis* hurdle that a claimant clears unless the impairment is only a slight abnormality that minimally affects work ability." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal citation and quotations omitted). Nevertheless, it is the claimant's burden to prove both that her impairment significantly limits her work-related activities and that her impairment has lasted or is expected to last for a continuous period of at least 12 months. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)

The ALJ in the instant matter concluded that only "bilateral foot disorder" represents a severe impairment. (AR 22.) Plaintiff contends that the ALJ erred by failing to additionally find that migraines, dizziness, musculoskeletal disorders, and "other conditions" constitute severe impairments. (DE 16-1 at 16.) According to Plaintiff, "[c]omplaints of and treatment for these

conditions" are documented in her treating chiropractor's records and, therefore, the administrative decision must be reversed because the ALJ "failed to measure [her] other well-supported impairments to any standard." (*Id.* at 17.)

Plaintiff's argument is unpersuasive for multiple reasons. First, the ALJ clearly discussed, with relevant citations, the very records from Plaintiff's chiropractor that she suggests were overlooked. For instance, the ALJ noted that although Plaintiff had a "lengthy history" of treatment with her chiropractor for migraines and pain associated with her neck, hip, and back, Plaintiff denied any such symptoms during subsequent visits with her primary care physician. (AR 21.) Moreover, the ALJ discussed numerous other medical records indicating that such impairments were not severe in nature. (AR 19-23.) The ALJ specifically highlighted normal physical examination findings, normal findings derived from objective imaging studies, and Plaintiff's denial of certain symptoms – namely dizziness and "passing out" – to her treating providers. (AR 22.) Such evidence is substantial and therefore sufficient to support the ALJ's step two finding as to severity. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005)).

Second, even if these other conditions were improperly determined to be non-severe, the ALJ's determination that Plaintiff's bilateral foot disorder constitutes a severe impairment renders her argument moot. It is well-established that once an ALJ determines that at least one of a claimant's alleged impairments is severe, the claim survives the step two screening process, 20 C.F.R. § 404.1520(a)(4), and both severe and non-severe impairments are considered by the ALJ in the remaining steps of the disability evaluation process. 20 C.F.R. §§ 404.1523(c),

404.1545(a)(2). An ALJ therefore does not commit reversible error when he fails to find that some impairments are not severe but determines that other impairments are severe and proceeds to the next step of the evaluation process. *McGlothin*, 299 F. App'x at 522 (6th Cir. 2008) (citing *Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987)). Consequently, the ALJ's finding that Plaintiff's other conditions do not represent severe impairments at most represents harmless error, which does not necessitate reversal of the ultimate decision. *See Collette v. Astrue*, No. 2:08-cv-085, 2009 WL 32929, at *9 (E.D. Tenn. Jan. 6, 2009) ("[A]n administrative decision should not be reversed and remanded where doing so would be merely 'an idle and useless formality.'") (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)).

Indeed, the very case Plaintiff quotes at length to support her position actually underscores the distinction between reversible and harmless error at step two. *See Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985) ("[I]n order to ensure consistency with statutory disability standards, an impairment can be considered as not severe, *and the application rejected at the second stage of the sequential evaluation process*, only if the impairment is a slight abnormality which has such a minimal effect on the individual[.]") (emphasis added) (internal citation and quotations omitted). Because Plaintiff's application was not rejected at step two, and because the ALJ considered Plaintiff's additional conditions in the remaining steps of his evaluation, this assertion of error must be rejected.

### 4. Treating Physician Opinion and Other Medical Opinion Evidence.

Plaintiff argues that the ALJ erred by dismissing the opinions of her treating physician and her treating chiropractor, and by according greater weight to the opinions provided by non-examining state agency physicians. (DE 16-1 at 19.) An opinion from a treating source as to an individual's physical or mental functionality is entitled to controlling weight if the opinion is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[4] This provision – known as the "treating physician rule" – requires an ALJ who does not give controlling weight to a treating source opinion to provide "good reasons" for his or her decision that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011) (internal citation omitted).

On May 14, 2018, Plaintiff's treating physician, Dr. Steve Wampler, completed a medical source statement ("MSS") in which he opined that Plaintiff was subject to various physical limitations during an eight-hour workday that include the following: occasionally lifting and/or carrying 10 pounds; standing and/or walking for fewer than two hours (with periodic alternation between sitting and standing to relieve discomfort); occasionally climbing, balancing, kneeling, crouching, and stooping; never crawling; occasionally reaching and handling; and frequently feeling. (AR 454-57.)[5] The ALJ offered the following assessment of the MSS:

> [T]he limitations contained in his opinion are not well supported by the evidence of record, as discussed. The evidence shows Dr. Wampler primarily treated the claimant for acute sinusitis, occasional headaches, coughs and colds. The evidence shows Dr. Wampler did treat the claimant's foot pain symptoms with injections; however, he did not perform her surgery. Lastly, the undersigned finds Dr. Wampler's opinion is not well explained and he provided no objective findings to support the limitations.

(AR 26.)

---

[4] This regulation applies to all social security claims filed before March 27, 2017 (*see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017)), such as the instant one.

[5] "Occasionally" is defined as "occurring from very little up to one-third of an 8-hour workday," while "frequently" is defined as "occurring one-third to two-thirds of an 8-hour workday." (AR 454.)

Plaintiff contends that the ALJ "completely failed to follow the regulations" in providing this explanation (DE 16 at 19), although her argument does little more than recite the language of the relevant statute before claiming that the ALJ "ignored" the factors that must be considered in weighing medical evidence. (*Id.* at 21.) To the contrary, the ALJ emphasized that Dr. Wampler treated Plaintiff primarily for ailments unrelated to her allegedly disabling conditions, as was appropriate. *See* 20 C.F.R. § 404.1527(c)(2)(ii) ("We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed[.]"). The ALJ also noted – albeit somewhat vaguely – that Dr. Wampler, a family medicine practitioner (AR 457), referred Plaintiff to an orthopedist for treatment of the only severe impairment found in this matter: her bilateral foot condition. (AR 26, 60-61.) This too was a proper consideration under the regulation. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.")

Additionally, the ALJ highlighted Dr. Wampler's failure to identify any medical findings to support his MSS conclusion – despite being prompted to provide such evidence in five different places on the MSS form (AR 453-57) – which similarly represents a proper consideration. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").[6] The ALJ also found that Dr. Wampler's MSS was "not well supported by the evidence of record" (AR 26), and referenced inconsistencies in Plaintiff's reporting of

_____

[6] In response to one request for "medical/clinical finding(s) [to] support your conclusions" regarding exertional limitations, Dr. Wampler wrote merely that certain physical actions "could trigger nerve" problems and "could cause decreased circulation." (AR 455.) Dr. Wampler simply ignored the same request for findings with respect to postural, manipulative, and visual/communicative limitations. (AR 455-56.)

alleged symptoms, normal physical examination findings, and objective imaging studies demonstrating minimal issues. (AR 21-22.) Once again, this is precisely the type of analysis the ALJ is required to perform. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

It is true that the ALJ did not explicitly identify the amount of weight accorded to Dr. Wampler's opinion. However, as made clear by the foregoing discussion, the ALJ provided good reasons for not giving controlling weight to the opinion by assiduously applying the relevant factors under 20 C.F.R. § 404.1527(c) to the facts of the instant claim, which fulfills the purpose of the treating physician rule. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) ("[I]t is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard … to see if [the ALJ] implicitly provides sufficient reasons for the rejection of [the treating physician's] opinion … not merely whether it indicates that the ALJ did reject [the treating physician's] opinion.") The ALJ's duty to provide a reasonable explanation marked with good reasons does not require an "exhaustive, step-by-step analysis." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017). Put another way, the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all time." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011) (citing *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam)). The Court also emphasizes that here, in addition to applying the relevant regulatory factors, the ALJ in fact adopted some of the limitations set forth by Dr. Wampler – namely the restrictions that correspond to the requirements of "sedentary work" under 20 C.F.R. 404.1567(a) for lifting only 10 pounds occasionally and "less than 10 pounds" frequently (AR 454) – which lends further support to a finding that substantial evidence attends the ALJ's decision. *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391-392

(6th Cir. 2004) (holding that it was "significant that the [ALJ] did not reject wholesale the conclusions" of the treating physician and emphasizing that the ALJ may reject all or a portion of a treating source's findings). The Court therefore discerns no reversible error based on the treating physician rule.

Plaintiff next faults the ALJ for failing to give significant weight to the opinion of her treating chiropractor, Paul Corfman. Mr. Corfman completed an MSS on May 1, 2018 in which he opined that Plaintiff was subject to largely the same physical limitations set forth in Dr. Wampler's opinion: occasionally lifting and/or carrying 10 pounds; standing and/or walking for fewer than two hours (alternating between sitting and standing); occasionally climbing, balancing, kneeling, crouching, and stooping; never crawling; and occasionally reaching, handling, and feeling. (AR 449-52.) The ALJ rejected this opinion based on its lack of consistency with other evidence in the record, including normal imaging studies, and noted that Mr. Corfman does not represent an acceptable medical source under relevant regulations. (AR 26.)

As an initial matter, it is indisputable that chiropractors do not represent "acceptable medical sources" who are able to provide "medical opinions … that reflect judgments about the nature and severity of [a claimant's] impairment(s)[.]" 20 C.F.R. § 404.1527(a)(1). Plaintiff suggests that because the regulation uses the term "treating source," as opposed to "treating physician," Mr. Corfman's opinion should be subject to the same level of scrutiny applied to opinions provided by treating medical physicians pursuant to 20 C.F.R. § 404.1527(c). (DE 16-1 at 22, n.4.) This suggestion is clearly inaccurate. *See* SSR 06-03p, 2006 WL 2263437, at *45594 (August 6, 2006) ("Medical sources who are not 'acceptable medical sources,' such as … chiropractors …"). Mr. Corfman's opinion is instead categorized as "other source" evidence,

which "may provide insight" regarding Plaintiff's condition, *id.*, but is "not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014).

Bearing this in mind, the Court finds no error in the ALJ's decision to accord little weight to Mr. Corfman's MSS. Plaintiff claims that the ALJ failed to properly weigh the opinion "because he mistakenly thought he could not give weight to [it]." (DE 16-1 at 22-23.) However, as noted above, the ALJ explicitly found that Mr. Corfman's conclusions were mostly inconsistent with the administrative record, which demonstrated mild musculoskeletal findings. (AR 21, 26.) Of note, there were no abnormal findings with respect to Plaintiff's back or neck during the course of her treatment with Dr. Wampler, who repeatedly found that Plaintiff exhibited a normal range of motion, normal motor functioning, and normal ambulation. (AR 310-11, 314-15, 318-19.) The ALJ also highlighted mild x-ray findings showing an entirely normal lumbar spine and only "mild" disc space narrowing in the cervical spine at the C5-6 level (AR 26, 323-24), which bolsters the ALJ's conclusion that Plaintiff can perform a full range of sedentary work. *Cf. Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016) (holding that diagnostic imaging demonstrating "mild-to-moderate findings and no significant degeneration" in the cervical spine supported finding that claimant could perform range of light work). Because Plaintiff identifies no actual error in the ALJ's assessment of Mr. Corfman's opinion, this assertion of error must be rejected.[7]

---

[7] To the extent that the ALJ erred by allocating a specific amount of weight to Mr. Corfman's opinion, the Court finds such an error to be harmless in nature. *See Reuter v. Saul*, No. 19-CV-2053-LLR, 2020 WL 7222109, at *10 (N.D. Iowa May 29, 2020), *report and recommendation adopted sub nom.* 2020 WL 6161405 (N.D. Iowa Oct. 21, 2020) ("[T]he ALJ need not explain the weight afforded to other medical source opinions with as much precision as that used to explain the weight afforded to acceptable medical source opinions" so long as he identifies "some inconsistency between the other source's opinions and the record.").

Plaintiff next challenges the ALJ's reliance on the non-examining state physicians' opinions, which each concluded that Plaintiff suffers from no severe condition (AR 74-75, 84-85), by presenting a two-fold argument. First, Plaintiff claims that the state agency findings should have been discarded because the physicians lacked access to the entire record. Second, Plaintiff objects to the very existence of these opinions based on her belief that the reports "are prepared by non-medical [disability determination services] personnel" on behalf of the physicians who ultimately sign the reports. (DE 16-1 at 23-24.)

Plaintiff's first argument is a misconstruction of the Sixth Circuit's holding in *Blakley*, which reversed an unfavorable administrative decision based on the subject ALJ's failure to acknowledge more than 300 pages of records documenting ongoing treatment with the claimant's treating physician. 581 F.3d at 409. Contrary to Plaintiff's argument otherwise, the Sixth Circuit held only that an ALJ must provide "some indication" that such records were considered "before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (quoting *Fisk v. Astrue,* 253 F. App'x 580, 585 (6th Cir. 2007)). *Blakley* does not advance a "blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). To accept Plaintiff's argument would be to endorse the summary dismissal of any opinion provided before the conclusion of a claimant's course of treatment.

Here, the ALJ clearly considered the nature of Plaintiff's ongoing treatment following the issuance of the state agency opinions. (AR 22, 73, 85.) The ALJ discussed normal examination findings, mild x-ray findings, and the impact of treatment on Plaintiff's symptoms before assessing the severity of her impairments and formulating the RFC. (AR 22-23.) Plaintiff identifies no error in this process that would warrant reversal. *See Robinson v. Comm'r of Soc. Sec.*, No. 5:14-CV-

291, 2015 WL 1119751, at *11 (N.D. Ohio Mar. 11, 2015) ("There is no categorical requirement that the non-treating source's opinion be based on a complete or more detailed and comprehensive case record. The opinion[] need only be supported by evidence in the case record.") (citing *Helm*, 405 F. App'x at 1002) (internal quotations omitted).

Plaintiff's general objection to the ALJ's reliance on opinions from state agency physicians is similarly unfounded. First, state agency physicians "are highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), and the ALJ is entitled to rely on their opinions if they are supported by the record. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009). Second, Plaintiff improperly asks the Court to "consider" a 2019 newspaper article concerning the purportedly nefarious manner by which state agency physicians receive compensation for their services. (DE 16-1 at 24; DE 16-2.) As previously noted, the Court is not at liberty to review extrinsic evidence unrelated to the administrative record. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) ("The district court simply [is] not in the position to consider new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). The article therefore has no bearing on whether the ALJ's decision is supported by substantial evidence.

The ALJ in the instant matter accorded "partial weight" to the state agency physicians' opinions based on a detailed discussion of the evidence of record. (AR 21, 26.) Notably, the ALJ determined that Plaintiff's condition was more severe than these physicians opined, as evidenced by his statement that the state agency assessments were "not entirely consistent with the evidence of record" with respect to plantar fasciitis. (AR 21.) The ALJ highlighted complaints of bilateral foot pain in late 2015, but weighed such reports against Plaintiff's conservative treatment, her normal examination findings, and the absence of significant abnormalities from imaging studies.

(AR 21, 25-26.) This does not, as Plaintiff suggests, demonstrate rote deference to the opinions of the state agency physicians, but instead reflects a reasonable evaluation of the medical evidence. Because Plaintiff identifies nothing that warrants reversal of the ALJ's decision, this assertion of error is rejected.

### 5. The ALJ's Refusal to Recontact the Treating Physician.

Plaintiff's next assertion of error involves the ALJ's statement that Dr. Wampler's MSS "is not well explained and [] provided no objective findings to support the limitations." (AR 26.) Plaintiff invokes 20 C.F.R. § 404.1519p(b) – which pertains to reports completed by consultative examiners, not treating physicians – to allege that remand is required in this matter so that the ALJ can contact Dr. Wampler to obtain "additional information" necessary to conduct a complete evaluation of Dr. Wampler's MSS. (DE 16-1 at 25-26.) Plaintiff references two cases from the Western District of Tennessee to support her argument, although neither reference contains a citation that would allow the Court to ascertain and review the opinion in question. (*Id*. at 25.)

Plaintiff's argument is unpersuasive for the conspicuous reason that 20 C.F.R. § 404.1519p(b) does not apply to the MSS given that Dr. Wampler is not a consultative examiner. The regulation is instead aimed at ensuring that consultative examinations requested by ALJs yield clear findings and perspicacious explanations that contribute meaningfully to the Commissioner's evaluation of disability. *See Smith v. Colvin*, 9 F. Supp. 3d 875, 887-88 (E.D. Wis. 2014) (remanding ALJ's denial of disability based on ambiguous explanations contained in a consultative examiner's report and citing 20 C.F.R. § 404.1519p for the proposition that "the [Commissioner] and the state agencies that assist it should demand greater clarity and precision from the consultants it pays to assist it in the important task of evaluating disability claims"). Plaintiff's desire to expand this narrow regulation to cover opinions provided by treating physicians is simply misplaced.

The ALJ's decision to discount Dr. Wampler's opinion based on its lack of support in the record is entirely appropriate. As discussed above, supportability is in fact a pillar of the treating physician rule and thus a mandatory consideration. *See* 20 C.F.R. § 404.1527(c)(3). *See also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (affirming ALJ's rejection of treating physician's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks"). The ALJ is required to recontact a treating physician "only when the information received is inadequate to reach a determination on claimant's disability status," not when the treating provider's proffered limitations lack support in the record. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009). Because the ALJ was under no obligation to rectify Dr. Wampler's deficient MSS, this assertion of error is rejected.

### 6. Substantial Evidence.

Plaintiff's final assertion of error is simply a reiteration of arguments made elsewhere in her brief. (DE 16-1 at 26-28.) Plaintiff again accuses the ALJ of violating the treating physician rule, although as previously discussed, this argument does not pass muster. Plaintiff also suggests that the Court "reconsider" the evidence of disability based on the ALJ's alleged failure to develop the record (*id*. at 27, n.6), even though such an undertaking would very clearly require the Court to overstep its authority. *See Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 780-81 (E.D. Mich. 2019) ("[T]he fact that some evidence suggests impairment does not invite the court to reweigh the evidence and reach its own conclusion … [T]he ALJ's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.") (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) (internal quotations omitted). Because

the Court finds that substantial evidence supports the ALJ's determination, Plaintiff's assertion of error is rejected.

## V. RECOMMENDATION

Based on the foregoing analysis, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (DE 16) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge